## MILTON PARKER *vs.* JOHN N. CLARKSON, *et al.*

### January Term, 1870.

1. C.'s real estate is encumbered with liens, and a suit is pending to enforce them. Pending the suit C. dies, leaving four heirs. H., a daughter, married S. H. E.; and there is a marriage settlement investing in J. A. E., a trustee, the real estate inherited by the daughter, H., for her sole and separate use. In the pending suit a decree is rendered by the circuit court of Lynchburg, in 1854, against her trustee, for the one-fourth of the liens against the real estate of which her father, C., died seized. S. H. E., her husband, and J. A. E., her trustee, with the consent and approbation of the husband, join in a deed to J. N. C. for two tracts of land in Kanawha county, included in the marriage settlement, and against which the decree was rendered; and a lien is retained in the deed for 11,000 dollars, the whole of the purchase money, and a deed of trust was executed by J. N. C. at the date of the deed, to secure 9,600 dollars, parcel of said purchase money. J. N. C. never paid all the purchase money, and became involved, and executed sundry deeds of trust on his lands, and judgment liens were also obtained against him. HELD:

    I. That the lien of the decree against E., the trustee, resting on the estate conveyed in the deed of settlement, was paramount to the rights and title of the grantors and *cestui que trust* therein, and the provisions of the deed of settlement could not be carried into effect, *as to any part* of the property, so long as the lien remained unsatisfied, and they could neither sell it for the purposes of reinvestment, nor could the *cestui que trust* enjoy the rents and profits, or any part thereof, for at least five years, and under the circumstances, it was clearly competent to sell a *part* of the estate and discharge the lien, in order that the residue might be enjoyed by the *cestui que trust*, and in doing so, there was no violation of the spirit of the deed of settlement, at least none that the *cestui que trust* could be heard to complain of.

*He was interested in the result. Judge Irvine, of the VIII circuit, was called to the bench.

II. That J. N. C. having paid into the Savings Bank at Lynchburg, and to the receiver of the circuit court of Lynchburg, the amount of the sum secured by the trust deed executed by him to the trustee, J. A. E., a part of which payment was made with the consent of the trustee, to discharge the lien decreed by that court against the lands conveyed him by the trustee and the *cestui que trust* and her husband, the lien of the trust thereby became discharged, and the lands were subject to the claims of the creditors of J. N. C.

III. That J.N.C. should be charged with the amount of the purchase money, 11,000 dollars, and credited with the amount he paid at sundry times into the bank, to the credit of the decree of the Lynchburg court, 11,847 dollars and 16 cents; and the residue of the purchase money should be paid to the trustee of the *cestui que trust*, to be held for her use according to the provisions of the marriage settlement.

2. The deposition of a party to a suit is taken before the passage of the act of February 7th, 1868; exceptions were taken to the deposition on account of the incompetency of the witness, by reason of interest in the result of the suit at the time the deposition was taken, but as that objection has been removed by the act aforesaid, and as the deposition when read on the hearing could have no more weight than if taken since the passage of the act, making the witness competent, no good reason exists why the deposition should be retaken, and it may be read on the hearing of the cause after the passage of the act.

In December, 1865, Milton Parker filed his bill in the circuit court of Kanawha county, against John N. Clarkson and others, to enforce the lien of sundry judgments obtained by him against said Clarkson before that time in the county and circuit courts of Kanawha county, against two tracts of land in the county aforesaid, conveyed to him on the 10th of April, 1855, of 295 and 23 acres, respectively, by Samuel H. Early and wife, and Jubal A. Early, as trustee for Henri Ann Early, wife of Samuel H. Early, in a marriage settlement between her and her husband. The bill further alleges that on the same day of the conveyance to Clarkson, to wit, on the 10th day of April, 1855, he executed a deed of trust to Isaac Reed and William A. Quarrier, trustees, to secure to Jubal A. Early, trustee for Mrs. Clarkson, three notes of 3,200 dollars each, payable respectively, on the first day of January, 1856, 1857 and 1858, ex-

COURT OF APPEALS OF WEST VIRGINIA. 409

Jan'y Term,                    Parker vs. Clarkson et al.                    1870.

ecuted by John N. Clarkson to Jubal A. Early as trustee for the wife of said Clarkson; and that said three notes amounting in the aggregate to 9,600 dollars, was a balance of unpaid purchase money on said two tracts of land, and that the same and every part thereof had been paid by Clarkson to Jubal A. Early, or to his order, and that the two tracts of land are unencumbered as to said purchase money. The bill further alleges that Clarkson purchased at public sale 120 acres of land in Kanawha county, sold as the property of E. V. Carr and others; that he failed to pay the purchase money, and that in June, 1865, the same was sold under a decree for the payment of the purchase money, at the price of 19,350 dollars, being four or five thousand dollars over the residue of the purchase money then due thereon. The bill asks that said surplus, which would come into the hands of commissioner Fayette A. Lovell, be paid by him to the credit of this suit. It is also alleged by the complainant that on the 3d of October, 1857, Clarkson conveyed to W. W. Newman, trustee, a farm in Kanawha county of 300 acres purchased by him of Richard H. Cralle, in which Cralle has a life estate; also, the farm of 120 acres lying near Charleston, purchased by him at public sale in trust; also certain slaves, cattle, hogs and horses in trust, to secure the payment of three single bills of date of the deed of trust—two of them for 2,000 dollars and the other for 1,500 dollars, with interest from date, executed by Clarkson to John G. Newman. That said Clarkson also, on the 16th of November, 1857, conveyed to John N. Mosely and Frederick N. Reed, the aforesaid 300 and 120 acre tracts, also a tract of 150 acres on which is erected salt works, and purchased by said Clarkson from Brayton Allen; also sundry slaves, hogs, cattle, mules and horses to secure Samuel A. Miller and John R. Johnson as said Clarkson's sureties in three several bonds bearing date on the 14th of November, 1857, for the sum of 2,233⅓ dollars each, and payable in nine, sixteen and twenty-four months after date, and payable to Fitzhugh C. Hedrick and J. M. Laidley,

commissioners, and being for the purchase money of the tract of land, furnace, &c., sold to Clarkson by the aforesaid commissioners in the suit of *Carrick's adm'r and others* v. *Warth, English and others.* It is alleged in the bill that said Clarkson claims title to and really owns the Allen tract of land and salt works, mentioned in the aforesaid trust deed, except one-third thereof, the dower interest of Mrs. Allen, the wife of the vendor of Clarkson, which was exposed to sale and purchased by her. It is also alleged in said bill that the deed of trust executed by Clarkson to W. W. Newman on the 120 acres near Charleston, and certain negroes, to secure W. G. Newman the 2,500 dollars, has been satisfied, and the amount due W. G. Newman paid, and that the surplus arising from the sale of said 120 acre tract is unencumbered, and that the slaves mentioned in said deed of trust were carried by John N. Clarkson out of the State of Virginia, with the consent and approval of W. W. Newman, the trustee, and that said slaves were more than sufficient to satisfy said trust, and that even if said single bills were unpaid, John G. Newman has forfeited all right to be secured by said surplus arising from the sale of the land. It is further alleged that subsequent to the rendition of two judgments against John N. Clarkson, the one in favor of the complainant for 1,486 dollars and 76 cents, and the other in favor of James Ogbourne for the use and benefit of the complainant for 400 dollars, the said John N. Clarkson executed a deed of trust to John J. Williams as trustee, conveying large real and personal property to secure certain creditors, including the complainants' last named judgments; that the trustee removed to California, and no sale has been made under the trust deed, and that a large portion of the debts chargeable on the property embraced in said trust have been paid; but that no portion of complainant's judgments have been discharged— and that subsequently to the execution of said last named deed of trust, said Clarkson conveyed a lot of 1¾ acres in the town of Charleston, embraced in said trust, and sold to

him by Donnelly and wife, by deed bearing date 5th of November, 1851, to Thomas R. Swann. Swann conveyed the same to Mayes, and Mayes to Young; and that subsequent to the execution of said trust deed, John N. Clarkson conveyed all the property described in said trust deed as purchased by him of James M. Laidley and Ann, his wife, by deed bearing date 6th of September, 1851, and of Harrick and wife, and Elizabeth Carr and Sarah Carr, by deed of 10th of May, 1851, to Samuel Ruffner, and said Ruffner afterwards conveyed the same to George Jeffries—all of which conveyances subsequently, by the execution of said trust deed are alleged to be null and void. It is also claimed that the Allen tract of land and salt works are embraced in the deed of trust to Williams, and that the judgments of complainant aforesaid constitute a first lien on the same, excepting the dower interest aforesaid, and prays that the same may be sold and said judgments satisfied, &c., and prays an account may be taken, &c.

At the April rules Samuel H. Early filed his answer in which he admits that he joined with his wife Henri A. Early and her trustee Jubal A. Early, in the deed to John N. Clarkson for the two tracts of land in the bill mentioned bearing date 10th of April, 1855, and also that the said Clarkson on the same day executed a deed of trust on the same lands to secure the payment of the 9,600 dollars balance of purchase money to said trustee, and denies allegations of the bill that any part of the same has been paid either to himself or wife or to the said trustee. Jubal A. Early, the trustee, also filed his answer at the April Term, 1868, in which the sale to Clarkson of the two tracts of land in Kanawha county are admitted, and the trust deed by Clarkson to Read and Quarrier to secure the payment of the purchase money of 9,600 dollars is also admitted, and the deed of marriage settlement between the said Samuel H. Early and Henri Ann Early is made part of his answer, by which in contemplation of said marriage the whole of the real estate inherited by said Henri Ann from her father,

Dr. John J. Cabell, was conveyed to respondent as trustee for the sole and separate use of Henri Ann during the coverture of the intended marriage between herself and Samuel H. Early; and that the land in Kanawha county—conveyed by himself and Samuel H. Early and wife to John N. Clarkson—was embraced in said marriage settlement, and that the agency of respondent in the sale to Clarkson was merely that of ratifying the contract by signing the deed, and being assured that the price agreed to be paid was a sufficient one. It is also shown in the answer that there was a suit of Meem against John J. Cabell and others pending in the circuit court at Lynchburg, Virginia, to subject his real estate to the payment of certain liens against it; that at the death of said Cabell the suit was continued against the heirs, of whom there were four sets; that said suit was pending at the time of the conveyance aforesaid to Clarkson, and that a decree was rendered in said cause against each set of said heirs for the one-fourth of said liens, which made the amount to be paid by respondent as the trustee of Henri Ann, one-fourth of said liens which was specifically decreed in said suit against Henri Ann—payable in three installments. The land was sold to Clarkson for 11,000 dollars, and a lien for that sum was retained in the deed, but only 9,600 dollars, a part thereof, was secured by the deed of trust; and further that no part of said 11,000 dollars has been paid, and the whole amount is claimed under the lien in the deed, and by virtue of the deed of trust.

A decree was entered that Mrs. Henri Ann Early was entitled to recover of John N. Clarkson the sum of 11,473 dollars and 26 cents, the residue of the purchase money aforesaid, which sum constituted the first lien upon the land, and in default of payment, commissioners were appointed to sell the lands therein named, &c.

It appears in the evidence that Clarkson had paid at sundry times, to the credit of the decree of Meem against Cabell's heirs, into the Lynchburg Savings Bank, large sums

of money; and one of the errors in the decree of the circuit court of Kanawha in this case complained of is, that the court overruled the exceptions to the report of the commissioner which embraced an item of 1,400 dollars, which was to have been paid in thirty days, the down payment on the sale of the two tracts of land, by Clarkson, and also an item of 4,600 dollars, an indebtedness of Clarkson to Early's *cestui que trust* for personal property. The first item of which is acknowledged to have been paid by Samuel H. Early, agent for the trustee of Henri Ann Early, but the payment of which is denied in the answer of Jubal A. Early, and for the whole of which a lien was retained in the deed to Clarkson. The second item was decreed to constitute no lien against the real estate in question.

From which decree complainant appealed to this court.

*Lee* for the appellant.

*Bdmiston* and *Wm. Daniels* for the appellees.

BERKSHIRE, J.   In disposing of the questions arising in this case, I propose to consider them in the order in which they were made and argued by the counsel for the appellees. The first question discussed by them was the power and authority of the trustee and *cestui qui trust*, under the deed of marriage settlement, to make the sale to Clarkson. This objection was made here for the first time, and it was earnestly insisted that by the terms of this instrument, a sale is prohibited, unless for special purposes of reinvestment in the mode therein specified; that as it appeared that the rents and profits of the estate conveyed in the deed of settlement, were sufficient in five years to discharge the decree of *Meem* v. *Cabell and others*, it was not competent for the court in that case to have decreed a sale of the land so conveyed, or any part thereof, and consequently the sale to Clarkson was in direct violation of the deed of settlement under which the grantors held; that Clarkson was bound

to take notice of it at his peril; and that it was the duty of this court, in the application of the purchase money, to protect the interest of the *cestui qui trust* without regard to the interests of Clarkson or his creditors.

In considering this question it is necessary to advert to the conditions of the estate conveyed, and the rights and power of the grantor in the deed of settlement at the time it was executed. It appears that this estate descended to the grantor and *cestui que trust*, Henri Ann Early, from her father, Dr. John J. Cabell, who, it appears, was largely indebted at the time of his death, (the debts, including interest, amounting to upwards of forty thousand dollars, after exhausting the personalty,) and that a suit by the creditors was pending in the circuit court of Lynchburg to subject the said estate to the payment of said debts at the time of the execution of the deed of settlement; and that subsequently a decree was rendered separately against the four sets of heirs of the said Cabell for their respective portions of the debts amounting to the sum of 8,237 dollars and 52 cents each, to be paid in three several installments, due respectively on the first of January, 1856, 1857, and 1858, and the *lien* previously existing on the real estate of said Cabell for said debts was expressly reserved in said decree.

After the rendition of this decree, the deed from Jubal A. Early, the trustee, Henri Ann Early, the *cestui que trust* and her husband Samuel H. Early, was made to Clarkson for the land in controversy. This deed recites the fact of the deed of marriage settlement under which the grantors claimed, and after referring to the decree of the circuit court of Lynchburg which constituted a lien on the whole estate conveyed in the deed of settlement, it is further recited that, "In the opinion of the trustee and *cestui que trust*, it is advisable to *sell* a *portion* of said real estate in *order to remove the lien aforesaid;* the said Jubal A. Early and the said Henri Ann Early, with the approbation and consent of the said Samuel H. Early have sold," &c.

It is clear, therefore, that, as the lien, resting on the es-

tate conveyed in the deed of settlement, was paramount to the rights and title of the grantors and *cestui que trust* therein, its provisions could not be carried into effect as to any part of the property so long as the lien remained unsatisfied, as they could neither sell it, or any part of it for the purposes of reinvestment, nor could the *cestui que trust* enjoy the rents and profits, or any part thereof, for at least five years. Under these circumstances, it seems to me it was clearly competent to sell a part of the estate and discharge the lien, in order that the residue might be enjoyed by the *cestui que trust*, and in doing so there was no violation of the spirit of the keed of settlement—at least none that the *cestui que trust* could be heard to complain of, as *non constat* her interest was thereby in fact (as she believed it would be) promoted rather than injured; and I am aware of no principle of equity that would tolerate so gross a fraud as would be practiced on Clarkson and his creditors, if his vendors were allowed, under the circumstances, to avoid the sale or require him to pay the purchase money over again. It was suggested that the children of the *cestui que trust* have an interest in this question and ought to have been made parties to this proceeding. But it is not perceived wherein they are injured or interested in this controversy. The mere possible interest which they might ultimately have in the property is clearly too uncertain and remote to make them necessary parties, or to enable them to defeat the provisions of the deed of settlement, in reference to the sale of the estate.

The next question in the order is the payment made by Clarkson on the purchase of the land in controversy. In considering this question, it is proper, in the first place, to dispose of the exceptions taken to the depositions of D. J. W. Clarkson, and James M. Laidly. These depositions were regularly taken and filed in the cause before the passage of the act of February 7th, 1868. The only objection taken to them was the incompetency of the witnesses on account of their interest in the result of the suit, at the

time the depositions were taken; but as that objection has since been removed by the act aforesaid, and as the depositions, when read on the hearing, could have no more weight than if taken since the passage of the act making the witnesses competent, no good reason is perceived why they should have been excluded and the parties required to go through the formality of retaking them.

I am of opinion, therefore, that depositions regularly taken and filed in a suit before the passage of the act before cited, if there be no other objection than the interest of the witnesses in the subject matter of the suit, fall directly within the spirit and policy of the act, and may be read on the hearing of a cause after its passage.

From the evidence in the record it clearly appears that Clarkson, at sundry times, made payments by deposit in the Citizens' Savings Bank at Lynchburg, to the credit of the decree of *Meem* v. *Cabell and others*, to the amount of 11,847 dollars and 16 cents. The three last payments of 2,500 dollars, 1,500 dollars, and 300 dollars, it appears were made to Charles R. Slaughter, who, it is stated in the answer of Jubal A. Early, was the receiver in the case of *Meem* v. *Cabell and others*, and by whom it seems the money was deposited in said bank. These payments, it also appears, were made to said Slaughter with the knowledge and consent of the trustee Jubal A. Early. The remaining question is the proper application of the money so paid by Clarkson into the bank at Lynchburg. It was earnestly and ably insisted here that these payments, if allowed at all, should be applied, first, to the payment of the debt of 4,600 dollars due from Clarkson to Samuel H. Early for the personal property purchased of him by Clarkson, mentioned in the contract between him and Samuel H. Early for the sale of said real estate and personal property of the 9th of April, 1855. Second, to the payment of the 1,400 dollars, being the first installment of the purchase money for the land in controversy, which was not included in the deed of trust on said land executed by Clarkson to secure

the residue of said purchase money. And it was also maintained that the excess of the money so paid to the credit of the Meem decree over and above the amount of the same, was an improper payment and misapplication; and that Clarkson should be charged with the same.

First, as to the debt of 4,600 dollars: There is no evidence in the record showing or tending to show that Clarkson had any authority to pay it, by depositing it in the bank to the credit of the Meem decree; and it would be, I think, a violent presumption to assume, in the absence of all evidence of authority, that he did do so. But on the other hand, the deed under which Clarkson claimed distinctly admonished him of the existence of the lien on the land conveyed to him and for the extinguishment of which it is therein expressly recited the sale and conveyance were made; and it was therefore his plain duty to apply the purchase money to the discharge of the said decree with or without the consent of his vendors; and the reasonable presumption is that he did apply it accordingly.

Second, as to the 1,400 dollars: In the contract between Samuel H. Early and Clarkson, and in the deed to the latter for the land in controversy, the consideration is stated to be 11,000 dollars, and a lien is expressly reserved in the deed for the whole amount of purchase money. This deed bears date on the 10th of April, 1855, and on the same day a deed of trust was executed by Clarkson on the lands so conveyed to him, to secure 9,600 dollars of the purchase money (being the residue after deducting the 1,400 dollars) due in three equal installments, payable as before stated, on the 1st day of January, 1856, 1st day of January, 1857, and first day of January, 1858, with interest from date, thus corresponding with the installments of the Meem decree. But no reference is made in the trust to the 1,400 dollars which, *by the contract,* was to be paid in thirty days. The trust deed, however, bearing the same date of the deed to Clarkson, it appears, was not admitted to record until the 3d of July following.

The answer of Jubal A. Early expressly denies the payment of the 1,400 dollars, as well as the authority of Samuel H. Early to receive it, while the answer of Samuel H. Early as expressly admits the payment of the same. The fact that the deed of trust was not admitted to record until some three months after its date and the date of the deed to Clarkson, and nearly two months after the 1,400 dollars were due, and does not secure the same, coupled with the admissions of Samuel H. Early, and other circumstances disclosed in the record, are certainly sufficient to create a strong presumption of the payment of the 1,400 dollars to Samuel H. Early. But, in my judgment, they are not sufficient to overcome the effect of the deed for the land, and the answer of Jubal A. Early, nor is any authority shown in Samuel H. Early to receive it. It was suggested that the letter of Clarkson to S. A. Miller, dated the 16th of November, 1867, which is found in the record, ought to have a controling influence on the question of the application of the payments made by Clarkson as aforesaid. If it were competent evidence, it seems to me, no such importance could properly be attached to it. There seems to be a studied indefiniteness in his statements, which would greatly impair, if it did not wholly divest them of any weight. He states in general terms that it was his purpose and intention that *all* the payments made by him on the purchase of the said real estate and personal property, should be applied first to a debt due Samuel H. Early personally and individually, and the residue of the payments to the discharge of the purchase money for the real estate. But he fails to state the *amount* paid, and *when, where,* and *to whom* it was paid.

But, it is not perceived upon what principle of law the unsworn written communication of a defendant who had failed to answer, to a third party, after the institution of the suit, could be received as evidence against any party to the suit, and in my judgment this letter is clearly inadmissable as evidence in this case.

Third, as to the excess paid beyond the Meem decree: The deed of settlement provides that whenever it is deemed expedient for the purpose of reinvestment, a sale of the real estate, or any part of it, may be made, and bank stocks or bonds of any of the States or the United States, are to be purchased with the proceeds of such sale. From this, I think it is clearly implied that the purchase money, in the event of a sale, would have to be paid to the party entitled to purchase the stocks or bonds, and to make such investments, and to do which, it is evident, would require both time and discretion; and in such cases I think the authorities are clear that the receipt of the money by the trustee is good, and will exonerate the purchaser. *Drewet et ux.* v. *Willshire*, 3 Swanton Chy. Reps., 698; *Balfour* v. *Welland*, 16 Ves.; 3 Sug. on Vendors, 100; 2 Tucker 451–2; 2 Story, § 1134.

The result of the foregoing views is that, in my judgment, Clarkson should be charged with the whole amount of the purchase money for the real estate (11,000 dollars,) and have a credit for the 11,847 dollars and 16 cents, the amount paid at sundry times into the bank at Lynchburg to the credit of the decree of *Meem* v. *Cabell and others*, and that the residue of the purchase money for the real estate should be paid to Samuel H. Early, as trustee for said Henri Ann Early, to be held for her sole and separate use according to the provisions of the deed of marriage settlement. I am of opinion to reverse the decree and remand the cause to the circuit court for further proceedings to be had therein in accordance with the principles above indicated.

The other Judges concurred.

DECREE REVERSED.